# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Civil Action Number:

JUAN CARLOS GIL,

      Plaintiff,

vs.

WOLVERINE WORLD WIDE, INC.,
and SPERRY TOP-SIDER, LLC,

      Defendants

---

## COMPLAINT

---

COMES NOW Plaintiff Juan Carlos Gil, by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Wolverine World Wide, Inc. and Defendant Sperry Top-Sider, LLC for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al., and the tort of trespass, and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Plaintiff Juan Carlos Gil brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Wolverine World Wide, Inc.'s www.sperry.com website throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land since 1992.

1

2.      Title III of the ADA has been extended to apply to websites. Specifically, the Honorable Bryan F. Foster held on March 3rd, 2016 that the ADA applied to websites where the plaintiff had demonstrated "he was denied full and equal enjoyment of the goods, services, privileges, and accommodations offered by defendant [via its website] because of his disability."[1]

3.      Companies operating on the internet twenty years (20) after consumers started using the internet to better their lives have to make decisions on whether to be inclusive, or to exclude visually-impaired people.[2]

4.      When the operators of a website do not take steps necessary to notice people of their website's limitations or to provide programming that works (interfaces) with universal screens readers[3], they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, ie: second-class citizens.

5.      When websites are not fully accessible to all, it's essentially a bad business practice, a detriment to their stakeholders, the visually-impaired, and society.

6.      For visually-impaired individuals (whose population is expected to double by 2050), it is essential that they are not excluded from society and segregated in the area of web commerce.

7.      This case arises out of the fact that Defendant Wolverine World Wide, Inc. Defendant Sperry Top-Sider, LLC have operated its business in a manner and way that

---

[1] *Davis v. Bmi/Bnd Travelware,* 2016 Cal. Super. LEXIS 217 (2016).

[2] Introduction of the Netscape Browser for consumers in 1996

[3] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

completely excludes individuals who are visually impaired from enjoying and accessing the www.sperry.com website.

8.      Defendant Sperry Top-Sider LLC (also referenced as "Defendant Sperry" and collectively, with Defendant Wolverine as "Defendants") owns and operates places of public accommodation which are a chain of upscale specialty retail stores under the brand name "Sperry." Sperry stores offer for sale to the general public their famous Sperry brand boating shoes, boots, sneakers, wearables, (including swimming wear), and accessories such as beanies, scarfs, and backpacks. Heretofore, referenced as "Sperry brand merchandise."

9.      Defendant Wolverine World Wide, Inc. (also referenced as "Defendant Wolverine" and collectively, with Defendant Wolverine as "Defendants") offers an adjunct website www.sperry.com ("website") which is directly connected to Defendant Sperry's Sperry retail stores, since the website provides a site locator Sperry physical store locations (places of public accommodation). Thus, www.sperry.com ("website") has a true nexus to Defendant Sperry's retail stores.

10.      This complaint seeks declaratory and injunctive relief to correct Defendants' policies and practices, to include measures necessary to ensure compliance with federal law, to include monitoring of such measures, and to update and remove accessibility barriers on the www.sperry.com website so that Plaintiff Gill (and other individuals who are visually impaired and who cannot access and comprehend the websites that operate therein without the aid of assistive technology) will be able to independently and privately use the www.sperry.com website.

11.     This complaint also seeks compensatory damages to compensate Plaintiff Gil for having been subjected to unlawful discrimination violations of privacy, trespass, and have been subject to invasion of privacy, and trespass by Defendant as a result thereof.

## JURISDICTION & VENUE

12.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access to internet website for services to order Sperry merchandise online.

13.     This is also an action pursuant to Electronic Communications Privacy Act 18 U.S.C. §2510 et. Seq.

14.     This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

15.      State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

16.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant Sperry Top-Sider LLC transacts business in this District, and the acts constituting the violation of the ADA occurred in this District.

17.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) by virtue of the fact that Defendant Wolverine World Wide, Inc.'s website is available within and

throughout this District by the general public who reside within this District, therefore the acts constituting the violation of the ADA occurred in this District.

18.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Juan Carlos Gil**

19.     Plaintiff Juan Carlos Gil (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

20.     Plaintiff Juan Carlos Gil is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Juan Carlos Gil suffers from cerebral palsy and optic nerve damage; as such, he is legally blind. Therefore, Juan Carlos Gil is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles. Further, Juan Carlos Gil is unable to walk and is confined to a wheelchair.

21.     Plaintiff Gil cannot use the computer without the assistance of screen reader software.

**Wolverine World Wide, Inc.**

22.     Defendant Wolverine World Wide, Inc. is, among other things, the owner and operator of the website www.sperry.com, and is an American shoe and clothing conglomerate. Defendant Wolverine was founded in 1883 as a footwear manufacturer, and is best known for their high quality rugged work and outdoor "Wolverine" brand

boots and Shoes.  Defendant has acquired other high quality shoe brands such as Hush Puppies (casual), Merrell (rugged outdoor sport), and Bates (uniform). Defendant Wolverine also manufactures footwear for brands, including Caterpillar and Harley-Davidson. In addition, Defendant manufactures shoes and boots for the military. In 2012, Wolverine World Wide, Inc. added the well-known brands Saucony, Keds, Stride Rite and Sperry co-defendant Top-Sider to their list of subsidiaries.

23.     Defendant Wolverine is listed on the NYSE, employs over 4,400 people and has sales in excess of $2.6 Billion USD (2015 SEC.

**Sperry Top-Sider LLC**

24.     Defendant Sperry Top-Sider LLC is a subsidiary of Defendant Wolverine, and is the manufacturer, owner, and operator of a chain shoe, apparel and accessory stores under the brand name "Sperry." Founded in 1935, Sperry Top-Siders, were the first boat shoes introduced into the boating and footwear markets.  In 2009 Sperry opened its first retail stores in Florida, being in Tampa, Orlando, and Boca Raton.

## FACTS

25.     Defendant Sperry is defined as a "public accommodation" because it is an entity which owns and operates, a chain of shoe, apparel and accessories retail stores under the brand name "Sperry," each of which is a "Place of Public Accommodation" which is defined as "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2). Each of Defendant's Sperry retail stores are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42

U.S.C. §12182, §12181(7)(E) and 28 C.F.R. Part 36. Defendant's Sperry retail stores are also referenced throughout as "place(s) of public accommodation," "Sperry stores."

26.     The Defendant Wolverine's website www.sperry.com ("website") is to provide the general public information on the various locations of Sperry retail stores throughout the United States and within the state of Florida.

27.     Defendant Sperry owns and/or operates sixty-eight Sperry full-price and Sperry outlet stores throughout the United States, and Sperry brand merchandise is sold by upscale boating retailers and in fine department stores, the locations of which can be accessed through the www.sperry.com website.

28.     The www.sperry.com services the various Sperry store locations represented by its physical sales locations and supports Sperry brand merchandise sold through independent specialty boating stores and department stores by providing information on each of the store locations where Sperry brand merchandise is available for sale to the general public.

29.     The website also provides general information of Sperry brand merchandise and in so doing supports Sperry brand merchandise sold through retail stores and department stores.

30.     Since the www.sperry.com website allows the general public the ability to locate one of the many retail store locations offering Sperry brand merchandise for sale to the general public, the website is an extension of the physical Sperry stores.  Hence there is a direct nexus between Defendant Wolverine's www.sperry.com website and Defendant Sperry's retail stores; therefore the website is characterized as a place of public accommodation; 42 U.S.C. § 12181(7)(E).

25

31.     Defendant Wolverine's www.sperry.com website also allows the general public access to purchase online a wide range of Sperry brand merchandise.  As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(E) and must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public.  As such, Defendant Wolverine has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[4]

32.     Plaintiff Juan Carlos Gil is a customer who is interested in purchasing the original Sperry top sider boating shoe, which is offered through Defendant Sperry's stores and through Defendant Wolverine's www.sperry.com website.

33.     The opportunity to shop for the original Sperry Top Sider boat shoes from his home is an important accommodation for Plaintiff Gil, because traveling outside the home as a blind individual is a difficult and frightening experience.

34.     Plaintiff Juan Carlos Gil frequently utilizes the internet. In order to comprehend information available on the internet and access/comprehend websites, Plaintiff Juan Carlos Gil uses commercially available screen reader software to interface with the various websites.

35.     Buying and ordering Sperry brand merchandise including Sperry Top Sider boat shoes online and having those purchases delivered to one's home is an

---

[4] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

important accommodation that helps improve the lives of vision impaired people such as the Plaintiff (and thousands of others like him), and helps them integrate and participate in society.

36.     Like most of us, Plaintiff Juan Carlos Gil accesses several websites at a time to compare merchandise and prices. When shopping online, Plaintiff Gil may look at several dozen websites to compare features, styles, and prices.

37.     Plaintiff Juan Carlos Gil is interested in purchasing Sperry Top Sider boat shoes.  Plaintiff Juan Carlos decided to shop online to learn about the Sperry brand merchandise through the www.sperry.com website.

38.     During the month of July 2016, the Plaintiff attempted on several occasions to utilize the Defendant's website to browse through the Sperry brand merchandise with the intent of making a purchase. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which is the most popular screen reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

39.     However, the www.sperry.com website did not integrate with Plaintiff's screen reader software, nor was there any function within the website to permit access for visually impaired through other means.

40.     The www.sperry.com website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: the lack of alt-text on graphics, inaccessible forms, the lack of adequate prompting and labeling; the

denial of keyboard access; and the requirement that transactions be performed solely with a mouse.

41.     The www.sperry.com website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms to purchase Sperry brand merchandise.   On a shopping website such as www.sperry.com, these forms include search fields to locate products, fields that specify the number of items desired, and fields used to fill-out personal information, including address and credit card information. Due to the lack of adequate labeling, visually impaired customers cannot easily make purchases or inquiries as to Sperry brand products, nor can they enter their personal identification and financial information with confidence and security.

42.     The Plaintiff attempted to locate any type of *Accessibility Notice*, any link[5], or any information relating to the website's future accessibility plans or information regarding contacting the Defendants to alert the Defendants as to the inaccessibility of the www.sperry.com[6] website.

43.     The fact that Plaintiff Gil could not interface with the www.sperry.com website left him feeling excluded, as he is/was unable to participate in the shopping experience online at the www.sperry.com website as experienced by the general public,

---

[5] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

[6] Other online retailers have taken steps  to notice and inform disabled users of their website programming plans and have direct email / toll free numbers to enable contact with the retailer e.g.
http://www.starbucks.com/about-us/company-information/online-policies/web-accessibility
http://www.tiffany.com/Service/Accessibility.aspx?isMenu=1&
http://www.potbelly.com/Company/Accessibility.aspx
https://www.dennys.com/accessibility/

26 years after the Title III of the ADA was enacted and which promised to remove such barriers.

44.     Plaintiff Juan Carlos Gil continues to desire to patronize the www.sperry.com website, but is unable to do so, as he is unable to comprehend the website due to his vision impairment because the website has not been designed to accommodate low vision people.  Thus, the Plaintiff and others with vision impairments will continue to suffer irreparable injury from Defendants' intentional acts, policies, and practices set forth herein unless enjoined by this Court.

45.     The www.sperry.com website did not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

46.     The www.sperry.com website is not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

47.     The www.sperry.com website is so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

48.     On information and belief, the Defendants have not initiated a Web Accessibility Policy to insure full and equal use of the www.sperry.com website by individuals with disabilities.

49.     On information and belief, the Defendants have not instituted a Web Accessibility Committee to insure full and equal use of the www.sperry.com website by individuals with disabilities.

50.     On information and belief, the Defendants have not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the www.sperry.com website by individuals with disabilities.

51.     On information and belief, the Defendants have not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the www.sperry.com website by individuals with disabilities.

52.     On information and belief, Defendants have not instituted a User Accessibility Testing Group to insure full and equal use of the www.sperry.com website by individuals with disabilities.

53.     On information and belief, the Defendants have not instituted a Bug Fix Priority Policy.

54.     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

55.     On information and belief, Defendants have not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

56.     On information and belief, Defendants have not created and instituted on the www.sperry.com website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the

Defendants will have the www.sperry.com website, Applications, and Digital Assets accessible to the visually impaired community.

57.     On information and belief, the www.sperry.com website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[7].

58.     On information and belief, the Defendants do not have a Web Accessibility Policy.

59.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of their website to visually impaired individuals who want the safety and privacy of purchasing Sperry brand merchandise online from their homes.

60.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website www.sperry.com.

61.     Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures.

62.     Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

63.     For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society with safety and in dealing with terms of their disability.

---

[7] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

64.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the www.sperry.com website, where they have a direct connection.

65.     On information and belief, the Defendants are aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of Sperry brand merchandise available in its Sperry store locations and available for purchase online at www.sperry.com.

66.     On information and belief, Defendants are aware of need to provide full access to all visitors of the www.sperry.com website.[8]

67.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

68.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

69.     Thus, Defendants have refused to make the www.sperry.com website accessible to individuals with disabilities who are visually impaired.

70.     According to Statistic Brain Research Institute[9], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as www.sperry.com and  have made an internet

---

[8] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)
[9] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/

purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

71.     According to the National Federation for the Blind[10], there are over seven million Americans with visual disabilities, and there are over half a million people with visual disabilities living within the state of Florida.

72.     The Defendants have failed to provide any mechanism by which to adequately serve visually impaired individuals such as the Plaintiff.  Defendants are operating in violation of Plaintiff Juan Carlos Gil's rights as protected by the ADA and Plaintiff Gill is entitled to injunctive relief. 42 U.S.C. §12188.

73.     Plaintiff Juan Carlos Gil has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from Defendants' unlawful and discriminatory practices.

74.     Plaintiff Juan Carlos Gil (and other individuals with visual impairments) will continue to suffer irreparable injury from Defendants' intentional acts, policies, and practices set forth herein unless enjoined by the court.

75.     Notice to the Defendant is not required as a result of the Defendants' failure to cure the violations. Enforcement of Plaintiff Gil's rights is right and just pursuant to 28 U.S.C. §§s 2201, 2202.

76.     Plaintiff Gil has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

---

[10] Statistics for 2012, see http://www.NFB.org/blindness-statistics

**Privacy Violations**

77.     Plaintiff Juan Carlos Gil utilizes his personal computer to access websites such as the www.sperry.com website.   Plaintiff Gil uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff Gil stores his personal information and retains his browsing history on his personal computer.

78.     Throughout the www.sperry.com website, the Defendant has programed cookies to collect personal information on the website's users (such as the Plaintiff).

79.     The Defendant's *Privacy Policy* informs the website user that any individual who accesses the website and commences to shop on that website is subject to having his/her personal information conveyed to third parties. Throughout the www.sperry.com website, the Defendant has programed cookies ("cookie" notice within the *Privacy Policy* section) to collect personal information on the website's users (such as the Plaintiff).

80.      According to the Defendant's website, the information collected (such as name, email address, gender, date of birth, billing and shipping addresses, telephone number, credit card information, and responses to surveys and questionnaires) is used  to ostensibly "improve products and services," and for targeted marketing and advertising. The Defendants also state that they use the user's personal information to Defendants' related affiliated companies (without so naming those other companies), service providers (without so naming the service providers) and other third parties (without so naming the third parties), to law enforcement officials (if so required to be transmitted by said law enforcement), and to other third parties as the Defendants deem appropriate,

marketing agencies, research agencies, and third party data processers, and third party vendors (ostensibly for use in conducting marketing research).

81.     The www.sperry.com website *Cookies And Other Tools That May Collect Information About You,* sections delineate how the Defendants capture the user's data and profiles the user in order to manage advertising based upon the captured data from the user's visit to the website and/or purchase of merchandise from the website.

82.     The Plaintiff is unable to comprehend the www.sperry.com *Privacy Policy* because of the inaccessibility of the website.  The Plaintiff has/had no choice (and therefore no knowledge) of Defendants' policy toward collection of the website user's browsing history and analytics placed on the user's computer.

83.     As such, through its www.sperry.com website, Defendants have committed a trespass against the Plaintiff, since the website uses software analytics to farm the Plaintiff's personal data and the personal browsing history of the Plaintiff as stored on the Plaintiff's computer.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

84.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-76 above.

85.     The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their

sites are fully accessible to individuals with disabilities[11].

86.     As a result of the inaccessibility of the www.sperry.com website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendants have denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendants have made available to the general public on the www.sperry.com website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

87.     Pursuant to 42 U.S.C. §12181(7)(E), www.sperry.com is a *place of public accommodation* under the ADA because it provides the general public with the ability to purchase Sperry brand merchandise online and have those items delivered to one's home. Further, the www.sperry.com website also serves to augment Sperry retail stores by providing the general public information on the various locations of Sperry stores and to educate the general public as to the line of Sperry brand merchandise sold on www.sperry.com, and sold in Sperry stores, via independent boating retailers, and in fine department stores.

88.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

---

[11] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

89.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

90.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

91.     As such, the www.sperry.com website must be in compliance with the ADA.  However, the website is not in compliance with the ADA.  Plaintiff Juan Carlos Gil has suffered an injury in fact because of the website's (and Defendants') non-compliance with the ADA.

92.     Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

93.     A sampling review of just part of the www.sperry.com website revealed that the website is not functional for users who are visually impaired.  The website contains several types of PETs (easily identifiable and correctable), which occur throughout the website such as:

1)  The language of the document is not identified,
2)  Image alternative text is not present, and
3)  A form control does not have a corresponding label.

94.     Further, the www.sperry.com website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

1)  Alternative text is likely insufficient or contains extraneous information,
2)  An event handler is present that may not be accessible,
3)  A heading level is skipped,
4)  Flash content is present,
5)  Adjacent links go to the same URL,
6)  A link contains no text, and
7)  Alternative text is likely insufficient or contains extraneous information.

95.     More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

96.     Further, the www.sperry.com website does not offer include the universal symbol for the disabled[12] which would permit disabled individuals to access the website's accessibility information and accessibility facts.

97.     Therefore, due to the Plaintiff's disability and the failure of the www.sperry.com website to be adequately accessible to individuals with visual impairments, the Plaintiff was unable to comprehend the www.sperry.com website.

_____

[12]  , or HTML "Accessibility" link for those individuals who are visually impaired

98.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include (but not limited to) adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the www.sperry.com website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to the Defendants.

99.     The Defendants have violated the ADA (and continues to violate the ADA) by denying access of www.sperry.com to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.   These violations within the www.sperry.com website are ongoing.

100.    As a result of the inadequate development and administration of www.sperry.com, Plaintiff Juan Carlos Gil is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

101.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

> a) Require Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of www.sperry.com to a statement as to the Defendants' policy to ensure persons with disabilities have full and equal enjoyment of the services,

facilities, privileges, advantages, and accommodations through its website, and

b) Require Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC to take the necessary steps to make the www.sperry.com website readily accessible to and usable by accessible visually impaired users, and during that time period prior to the www.sperry.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the www.sperry.com website, until such time that the requisite modifications are made.

102. Plaintiff Juan Carlos Gil has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff Juan Carlos Gil is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendants named herein.

## COUNT II – VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

103. Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–83 above.

104. The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, ("ECPA") regulates wire and electronic communications interception and interception of oral communications. Within the meaning of 18 U.S.C. § 2511(1), it is unlawful for a person to: intentionally intercept, endeavor to intercept, or procure . . . any other person to intercept or endeavor to intercept any wire, oral, or electronic communication.

105.    Defendants violated 18 U.S.C.§2511 by intentionally acquiring and/or intercepting (through the www.sperry.com website), by device or otherwise, Plaintiff Gil's electronic communications, *without knowledge*, consent, or authorization.

106.    Defendants did not obtain any permission[13] from Plaintiff to install any electronic software on his computer.

107.    Defendants did not obtain any permission14  from Plaintiff to install any analytic devices on his computer.

108.    The contents of data transmissions from and to Plaintiff's personal computer constitutes "electronic communications" within the meaning of 18 U.S.C. §2510.

109.    Plaintiff Juan Carlos Gil is a "person whose . . . electronic communication is intercepted . . . or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

110.    Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept the Plaintiff's electronic communications when the Plaintiff navigated (and attempted to comprehend) the www.sperry.com website.

111.    Defendants violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or endeavoring to disclose, to any other person, the contents of the Plaintiff's electronic communications, knowing or having reason to know that the information was obtained through the interception of the Plaintiff's electronic communications.

---

[13] Implied or otherwise
[14] Implied or otherwise

112.     Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of the Plaintiff's electronic communications, knowing of having reason to know that the information obtained through the interception of the Plaintiff's electronic communications.

113.     Defendants' intentional interception of these electronic communications was without the Plaintiff's knowledge, consent, or authorization and was undertaken without a facially valid court order or certification.

114.     Defendants unlawfully accessed and used the contents of the intercepted communications. On information and belief, such use included the enhancement of the Defendants' profitability and revenue.

115.     The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2520(a) provides a civil cause of action to "any person whose wire, oral, or electronic communications is intercepted, disclosed, or intentionally used" who is in violation of the ECPA.

116.     Defendants are liable directly and/or vicariously for this cause of action. Plaintiff Juan Carlos Gil therefore seek remedy as provided for by 18 U.S.C. § 2520, including such preliminary and other equitable or declaratory relief as may be appropriate and reasonable attorney's fees and other litigation costs reasonably incurred.

117.     Plaintiff Juan Carlos Gil has additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

118.     Pursuant to 18 U.S.C. § 2520, Plaintiff Juan Carlos Gil is entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 per day for each day of violation, actual and punitive

damages, reasonable attorneys' fees, and Defendants' profits obtained from the above described violations. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiff Juan Carlos Gil's remedy at law is not adequate to compensate him for these inflicted and threatened injuries, entitling the Plaintiff to remedy including injunctive relief as provided by 18 U.S.C. § 2510.

## COUNT III – TRESPASS

119.    Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–83 above.

120.    Plaintiff Gil's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by the Defendants on each and every date that the Plaintiff has accessed the www.sperry.com website.  Plaintiff Gil's personal information has suffered a trespass due to the employment of software analytics by the Defendants which are present on the www.sperry.com website which the Plaintiff has navigated.

121.    Plaintiff Gil was unaware of the information gathering by the Defendants (as outlined in its *Privacy Policy*) due to his inability to comprehend the www.sperry.com website.

122.    The Plaintiff did not consent to the gathering of his personal information and browsing history, therefore the Defendants have committed a trespass against the Plaintiff.

123.    By engaging in the acts of farming the Plaintiff's computer for data using various analytics as alleged in this action without the knowledge, authorization, and/or consent of the Plaintiff, the Defendants have dispossessed the Plaintiff from use and/or

access of his computer (or parts of his computer).  Further, the acts of the Defendants have impaired the use, value and quality of the Plaintiff's computer.

124.    The Defendants' acts constituted an intentional interference with the use and enjoyment of the Plaintiff's computer.

125.    By the acts described hereinabove, the Defendants have repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

126.    The Defendants did knowingly, intentionally, and without the consent of the Plaintiff access the Plaintiff's property and caused injury to the Plaintiff.

127.    In order to gain access to Plaintiff's computer and personal information, Defendants have engaged in deception and concealment.  Defendants' installation and operation of the Local Shared Objects (LSOs)[15] and execution of browser history sniffing code interfered and/or intermeddled with Plaintiff's computer, including by circumventing their controls designed to prevent the information collection effected by the Defendants. Such use, interference and/or intermeddling was without consent, or in the alternative, in excess of consent.

128.    The Defendants' installation and operation of the LSOs and execution of browser history sniffing code has impaired the condition and value of the Plaintiff's computer.

129.    The Defendants' trespass to chattels, nuisance, and interference caused real and substantial damage to the Plaintiff.

---

[15] Local shared objects (LSOs), commonly called Flash cookies (due to their similarities with HTTP cookies), are pieces of data that websites which use Adobe Flash may store on a user's computer

130.    As a direct and proximate result of the Defendants' trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property the Defendants have injured and impaired on the condition and value of the Plaintiff's computer as follows:

a)      By consuming the resources of an/or degrading the performance of the Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b)      By diminishing the use of, value, speed, capacity, and/or capability of the Plaintiff's computer;

c)      By altering and controlling the functioning of the Plaintiff's computer;

d)      By devaluing, interfering with, and/or diminishing of the Plaintiff's possessory interest in his computer;

e)      By infringing on Plaintiff's right to exclude others from his computer;

f)      By infringing on the Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

g)      By compromising the integrity, security, and ownership of the Plaintiff's computer; and

h)      By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

131.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC requesting the following injunctive and declaratory relief:

    a) The Court issue a declaratory judgment that Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC have violated the Plaintiff's rights as guaranteed by the ADA;

    b) The Court enter an Order requiring Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC to update the www.sperry.com website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by Title III of the ADA;

    c) The Court enter an Order requiring Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC to clearly display the universal disabled logo[16] within the www.sperry.com website, wherein the logo would lead to a page which would state the Defendants' accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.sperry.com website;

    d) The Court enter an order requiring Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a

---

[16] 

website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e) The Court enter an Order directing Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the website known as www.sperry.com;

f) The Court enter an Order directing Defendants Wolverine World Wide, Inc. and Sperry Top-Sider, LLC to establish a policy of web accessibility and accessibility features for the www.sperry.com website;

g) The Court to declare that Defendant's actions, as set forth above, violate the: (i) Electronic Communications Privacy Act, 18 U.S.C. § 2510; and Florida common law tort of trespass as alleged above;

a) The Court to declare the *Privacy Policy* as delineated on the website www.sperry.com null and void and rescinded and not applicable to the Plaintiff due to the inaccessibility of the website for visually impaired individuals such as the Plaintiff, who has no means to comprehend said terms and conditions of the *Privacy Policy* delineated therein;

h) The Court to declare that the privacy rights of the Plaintiff have been violated by the unwarranted and unauthorized software and analytics that have been placed on Plaintiff's computer without his consent;

b) The Court to award injunctive and equitable relief as applicable, including:

     i.    prohibiting Defendants from engaging in the acts alleged above;

    ii.    requiring Defendants to provide reasonable notice and choice to consumers regarding Defendants' data collection, profiling, merger, and de-anonymization activities;

   iii.    requiring Defendants to disgorge to Plaintiff all of Defendants' ill-gotten gains;

   iv.    requiring Defendants to delete all data from and about Plaintiff that it collected and/or acquired from third parties through the acts alleged above;

    v.    requiring Defendants to provide Plaintiff reasonable means to decline permanent participation in Defendants' collection of data from and about him;

i) The Court award damages (including statutory damages where applicable), in an amount to be determined at trial;

j) The Court to award restitution against Defendants for all money to which Plaintiff is entitled in equity;

k) The Court to restrain, by preliminary and permanent injunction, Defendants, their officers, agents, servants, employees, and attorneys, and those participating with them in active concert, from identifying Plaintiff online, whether by personal or pseudonymous identifiers, and from monitoring, accessing, collecting, transmitting, and merging with data from other sources any information from or about Plaintiff;

l)  The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; pre- and post-judgment interest to the extent allowable; restitution; disgorgement and other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; statutory damages, including punitive damages; and permanent injunctive relief prohibiting Defendants from engaging in the conduct and practices complained of herein; and

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 5th day of October, 2016.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*